UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

             Plaintiff,

v.                                      CASE NO.: 21-cr-615 PLF

STEVEN D. THURLOW,

             Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The January 6th Select Committee hearings have made it clear that a minority of attendees at President Trump's January 6 "Stop the Steal" rally planned to march from the rally on the Ellipse to the Capitol in order to engage in political violence. Most of these persons were members of organized anti-government groups. Members of these groups came to Washington, D.C. prepared with body armor, tactical gear, and weapons. Their plan relied on other rally goers being swept up in the moment and following them to the Capitol. Steven Thurlow was one of the many rally goers who went to Washington, D.C. intending to attend a rally. Like many others he was swept up in the mass hysteria that gripped much of the crowd. He entered the Capitol. While there he joined others in chanting and taking pictures. However, unlike many others he did not physically engage with law enforcement,

1

he did not destroy property, and, while he entered a sensitive area near the Senate chambers, there is no evidence that he knew this area was especially sensitive or important.  He did not enter private offices.  Although he owned firearms and tactical gear, and even joked about taking them to Washington, D.C. to protest, he did not bring them.  He entered the Capitol in a jacket and knit cap—appropriate gear for the weather.

After January 6, 2021, Mr. Thurlow began having regrets and removed his post relating to January 6 from Facebook.  He had some hostility toward the tone of the Biden administration and made occasional comments to friends about the continued anger felt within pro-Second Amendment community he was a part of. However, these comments were few and far between, and he attended no more rallies. He was not politically involved.  Unlike many other January 6 defendants, Mr. Thurlow has not made statements condemning the investigation of January 6, nor has he attempted to portray himself as a victim or political prisoner.  In his interview with the FBI, Mr. Thurlow expressed remorse and in no way minimized his own actions or the impact of the riot.

Mr. Thurlow is a licensed firearms dealer who has a large personal collection of firearms.  After his arrest he removed all his firearms from his home.  When the Probation Department conducted a home visit, they were concerned because they

viewed ammunition magazines and a firearm grip in his home.   When this information was relayed to Pretrial Services, they wanted the items removed from the home.   The magazines were part of Mr. Thurlow's business of custom decaling firearm magazines.   These items do not fit the federal definition of firearms Nevertheless, Mr. Thurlow agreed to remove them from his home.   This incident exemplifies his attitude toward his prosecution and the agencies involved.   He is respectful and he understands that he placed himself in the position he finds himself. He is ashamed to be a defendant in criminal case and ashamed he acted, in his own words, out of "stupidity" on January 6.

Mr. Thurlow's acknowledgement of his wrongdoing and acceptance of responsibility is somewhat extraordinary among January 6 defendants.   When this is coupled with the facts that he did not bring body armor or weapons to Washington, D.C., did not violently engage with police officers, and did not partake in property damage, Mr. Thurlow is among the least culpable of January 6 defendants and should receive among the lowest sentences.

**The Appropriate Sentence**

*1.*      ***Nature and Circumstances of the Offense and History and Characteristics of the Defendant***

The events of January 6, 2021 encompass a wide range of conduct.   The Department of Justice has alleged that some individuals traveled to Washington,

3

D.C. with the intent of entering the Capitol Building. Individuals can be seen assaulting officers and destroying property on bodycam and closed-circuit camera footage. Mr. Thurlow did not do any of these things. He is a first-time offender who served in the military. He followed the crowd into the Capitol Building and then left without hurting anyone or destroying anything.

Mr. Thurlow is a father of two sons, both of whom are following in his footsteps and serving in the military. He works as a construction foreman for his brother. He is married, and his participation in the events of January 6 and this prosecution has caused stress between he and his wife. The case has brought him some local notoriety. Some people cheer his actions and thank him for participating. Others express their disgust for his actions. He has even received death threats. He does not want any of this attention. He is neither a hero nor a villain. He is a normal person who, caught up with the crowd, made an extraordinarily stupid decision. More than anything, he wishes he never went to Washington, D.C. on January 6.

Mr. Thurlow is an avid gun collector and armorer. He works on firearms. His social circles include many individuals who are absolute in their support of the Second Amendment. Some of these individuals claim to be part of, or at least support, the Boogaloo movement. Mr. Thurlow and others felt the movement and name were silly. This is the reason he posed with the Boogaloo patch and tactical

gear and posted the photo in early January before he left for Washington, D.C.  It was a joke.  In light of the events of January 6, it is not funny. However, his lack of seriousness about the movement is demonstrated by the fact that he did not bring any of the items he posed with to Washington, D.C.  He wore normal clothing—a jacket and knit cap.

## 2.     *Need to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment*

As noted above, while the events of January 6, 2021 were serious, Mr. Thurlow's conduct places him among the least culpable participants and a custodial sentence is not necessary.

## 3.     *Need to Afford Adequate Deterrence and To Protect the Public from Further Crimes*

A sentence of incarceration is not necessary to protect the public or promote deterrence.  The Department of Justice has conducted research that has established that "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment." National Institute of Justice, *Five Things About Deterrence*.[1]  The fact that the Department of Justice has engaged in a nationwide investigation to track down and prosecute everyone who entered the Capitol Building on January 6, 2021

---

[1] NAT'L INSTITUTE OF JUSTICE, *Five Things About Deterrence* (Jun. 5, 2016), available at https://nij.ojp.gov/topics/articles/five-things-about-deterrence (last accessed May 20, 2021).

is the most powerful deterrent to similar future conduct.  As the National Institute of Justice research demonstrates, Mr. Thurlow's prosecution, not his sentence, will deter others from engaging in similar behavior.

**4.      Need to Provide Defendant with Education, Training, or Treatment in the Most Effective Manner**

Mr. Thurlow has a college education, no history of substance abuse, and a long and stable work history.  This factor is not a significant consideration in this case.

**5.      The Kind of Sentence and Sentencing Range**

This is a class B misdemeanor.  While the Court could impose up to 6 months imprisonment, but such a sentence is not justified.  A sentence of probation with some community service component would be in the best interest of Mr. Thurlow, his family, and the community in which they live.

The Government has indicated that they will be requesting a "split" sentence. Understanding that this Court has written a thorough opinion on this issue, Mr. Thurlow objects to the legality of such a sentence and will file a separate brief preserving this objection.

**6.      Need to Avoid Unwarranted Sentencing Disparities**

The Government has indicated to defense counsel that they will request a sentence of 30 days incarceration and 36 months probation.  This is similar to their

requested sentence in a number of cases.  In many of those cases, defendants more culpable than Mr. Thurlow received a substantially lower sentence than that requested by the Government:

 In *United States v. Jason Hyland*, 21-CR-0050, the defendant entered the Capitol and did not engage in violence of property destruction.  However, unlike Mr. Thurlow he lied to the FBI during his required debriefing.  While the Government requested the same sentence as here, Judge Cooper imposed a sentence of 7 days incarceration with no supervision.

In *United States v. Andrew Cavanaugh*, 21-CR-00362, the defendant was a veteran like Mr. Thurlow.  However, unlike Mr. Thurlow, during his interview with the FBI he minimized his conduct and claimed he did nothing wrong, that he entered the Capitol to help people, and, contrary to video evidence, claimed he tried to leave immediately.  Despite his lack of acceptance of responsibility, Judge Mehta declined to impose the requested 30 days of custody and sentenced him to 24 months of probation.

In *United States v. Matthew Buckler*, 22-CR-00162, Judge McFadden imposed 14 days of home detention and 24 months probation for a defendant who entered a private office where items were destroyed and stolen.  Again this defendant

7

was not truthful in his FBI interview, stating that he did not enter any private offices while in the Capitol.

In *United States v. Jonathon Laurens*, 21-00450, the defendant, who entered the Capitol immediately behind those who breached the Senate Wing Door and was with a group of rioters who attempted to breach the House Chamber, also minimized his conduct to the FBI. Despite this, he received 60 days of home confinement and 24 months probation.

Mr. Thurlow's case is perhaps most similar to *United States v. Jody Tagaris*, 21-CR-00368. There the Government requested a custodial sentence because the defendant entered a private conference room. Judge Bates ultimately imposed 24 months of probation.

## Conclusion

Mr. Thurlow is rather exceptional among January 6 defendants in that he was completely truthful with the FBI and did not minimize his conduct. He has expressed remorse and not tried to use his status as a January 6 defendant to stoke further political extremism. He is appropriately remorseful for his actions. A custodial sentence is not necessary. Because of his exemplary performance on pretrial release, a sentence of 12 months probation is sufficient but not greater than necessary to meet the goals of 18 U.S.C. §3553.

Submitted,

<u>s/James R. Gerometta</u>
Counsel for Jeramiah Caplinger
Federal Community Defender
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Email: james_gerometta@fd.org
Phone: 313.967.5542

Dated:  July 14, 2022

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                            CASE NO.: 21-cr-615 PLF

STEVEN D. THURLOW,

        Defendant.

_____/

## CERTIFICATE OF SERVICE

       I, hereby certify that on August 19, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

                        **FEDERAL COMMUNITY DEFENDER**

                        s/James R. Gerometta
                        Assistant Federal Defender
                        613 Abbott Street, Suite 500
                        Detroit, MI 48226
                        Phone: 313-967-5839
                        E-mail: james_gerometta@fd.org
                        P60260

Dated:  August 19, 2022

10